Case 6:21-cv-00022-DWM   Document 20   Filed 12/21/21   Page 1 of 12

Jory R. Strizich, #437339
Cheshire Corr. Inst.
900 Highland Ave.
Cheshire, CT 06410

Plaintiff Pro Se

**DEC 21 2021**

Clerk, U.S. Courts
District of Montana
Helena Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| JORY STRIZICH, | ) | CV 21-00022-H-SEH |
|---|---|---|
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | PLAINTIFF'S PRELIMINARY |
| DUSTIN PALMER, | ) | PRETRIAL STATEMENT |
| Defendant. | ) | |

COMES NOW the Plaintiff Jory Strizich ("Strizich"), pro se, hereby submits
this preliminary pretrial statement in accordance with the Court's October 5,
2021, Scheduling Order. (Doc. 15).

A. Brief Factual Outline of the Case

Plaintiff Strizich, a pro se prisoner proceeding under in forma pauperis
status, filed this action under 42 U.S.C. § 1983, alleging Defendant Dustin
Palmer ("Palmer") deliberately fabricated evidence and filed a false report
against him in retaliation for filing and threatening to file grievances and
lawsuits, thus violating Strizich's First Amendment right to be free from
retaliation for seeking redress/accessing the courts and Fourteenth Amendment
right to substantive due process at disciplinary proceedings. (Doc. 2).

This Court prescreened Strizich's complaint and ordered Defendant Palmer
to answer. (Doc. 4). Palmer filed a late answer therein denying that he
fabricated evidence and filed a false report or retaliated against Strizich
in any way. (See generally, Doc. 9).

1

B. Basis for Federal Jurisdiction and for Venue in the Division

Strizich bases jurisdiction of this Court over his claims of violation of federal constitutional rights on 42 U.S.C. §§ 1331(1), 1343 and 1983. Venue is proper given that all of the allegations occurred in Powell County, which is within the Helena Division. See D.Mont.L.R. 1,2(c)(4); 3.2(b)(3).

C. Factual Basis for Each Claim Advanced

Plaintiff Strizich's Complaint (Doc. 2 at ¶¶6-40) alleges that:

Prior to Defendant Palmer's actions in this case, Strizich had filed many prison grievances regarding a wide range of issues including, among other things, staff misconduct, conditions of confinement, and policies and procedures. On February 12, 2016, Strizich filed a federal lawsuit against numerous Montana Department of Corrections ("MDOC") and Montana State Prison ("MSP") employees alleging several violations of the United States Constitution and laws of Montana. See Strizich v. Batista, No. CV 16-00012-H-DLC-JTJ. This case is still pending on appeal. Strizich v. Batista, No. 18-36008. Strizich is well-known among prisoners and prison staff as litigious.

On April 20, 2018, Strizich was housed on the low security compound of MSP in A-unit. In the early morning hours of that particular day he was in his cell A128 sitting at his desk reading over his contact and mail logs. At approximately 8:15 a.m. Defendant Palmer and several other correctional officers entered the cell block and directed all prisoners to exit.

Strizich put his logs away, put on his sweater and beanie, and grabbed his MP3 player and earbuds to listen to music. When he exited the cell block Palmer was standing outside stopping and frisking prisoners. At this point Strizich was listening to music through the earbuds and could not hear anything. When it was his turn, he assumed position in front of Palmer (i.e., feet spread and arms out horizontally) to be frisked. Presumably Palmer gave Strizich a verbal order to remove the beanie from his head to be searched.

2

Suddenly Strizich felt a hard tug on his right ear, which caused him to pull away and take out his earbuds. Turned around and now facing Palmer, Strizich demanded to know what his problem was. Palmer snarled, "Oh, you can hear me now huh!? I said take your beanie off when I pat you down!"

Strizich told Palmer that if he ever touched him like that again they would have problems. Palmer laughed at him and said, "What are you going to do, grieve and sue me like you do everyone else? You whine too much." Strizich informed Palmer that was exactly what he would do. In response to Strizich's threat to grieve and sue him, Palmer told Strizich that he was going to teach him a lesson on respecting authority. Palmer then entered the cell block to assist the other officers with the shakedown - that is, search.

Thereafter Palmer went into Strizich's cell and planted a white crystal substance in clear plastic suran wrap kept in his top dresser drawer. At one point Strizich could observe Palmer through the cell block windows digging around inside of the floor heaters in the dayroom common area.

According to Defendant Palmer's shift supervising officer that day Sergeant Dawn Jones (formerly Dawn Phillpott), upon return to the Sergeant's Office Palmer "pulled a bundle of clear plastic suran wrap out of his pants pocket, which had a large amount of a white crystal substance" in it. Palmer falsely reported that he discovered the white crystal substance in the top drawer of Strizich's dresser.

As a result of Palmer's fabricated evidence and false report Strizich was cited for the infraction: possessing, introducing or using any narcotic, narcotic paraphernalia, or illegal/unauthorized drug. Based substantially on Palmer's fabricated evidence and false report Strizich was found guilty of the infraction at a disciplinary hearing. Strizich was also placed under criminal investigation and exposed to potential criminal charges, which caused him great mental and emotional distress.

3

Further, as a result of Palmer's fabricated evidence and false report Strizich spent approximately 237 days in solitary confinement until the infraction was set aside. Strizich's custody was increased from low security to maximum security and he suffered great loss of privileges and quality of life in his prison living conditions, and loss of limited liberty enjoyed by prisoners.

Specifically, and without limitation, Strizich was confined to a cell by himself 24 hours a day; his visitation rights were suspended for six months; he was removed from the Steps To Economic and Personal Success (STEPS) program; and he was deprived of his personal property, the ability to work, attend educational and vocational programs, associate with other prisoners, attend outdoor recreation in a congregate setting with the ability to engage in sports and other congregate recreational activities, attend meals with other prisoners, attend religious services, attend Alcoholics Anonymous and other self-help groups, and various other rights and privileges afforded to prisoners on the low security compound at MSP.

On June 13, 2018, at approximately 9:55 a.m. Palmer went to Locked Housing Unit 2, F-block (where Strizich was housed) and admitted to Strizich that he planted the white crystal substance and wrote the false report. In front of other inmate witnesses Palmer taunted Strizich, telling him "I told you I'd teach you a lesson on respecting authority."

Based upon the foregoing facts, Strizich believes his First Amendment right to be free from retaliation for filing grievances and lawsuits and Fourteenth Amendment right to substantive due process at his disciplinary hearing were violated.

D. **Legal Theory Underlying Each Claim, Including, Where necessary to a Reasonable Understanding of the Claim, Citations to Authority**

The Due Process Clause of the Fourteenth Amendment prohibits governments, including prison officials, from depriving a person of "life, liberty, or property without due process of law." U.S. Const. Amend. XIV.

There are two kinds of due process issues: procedural and substantive. Substantive due process, the only due process issue here, "bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" See Zinerman v. Burch, 494 U.S. 113, 125 (1990) (citation omitted); accord, County of Sacramento v. Lewis, 523 U.S. 833, 840 (1998).

As a threshold matter, Strizich does not allege that he was deprived of procedural due process at his prison disciplinary hearing. Thus, the 'atypical and significant hardship' standard announved by the Supreme Court in Sandin v. Conner, 575 U.S. 472 (1995), does not apply here. However, even if it did, Strizich has shown an atypical and significant hardship sufficient to trigger due process prtections by way of being moved from low security to maximum security as a result of Defendant Palmer's report. The Ninth Circuit takes a flexible approach to the atypical and significant question. It has said:

> Rather than invoking a single standard for determining whether a prison hardship is atypical and significant, we rely on a "condition or combination of conditions or factors [that] requires case by case, fact by fact consideration."... Specifically, we look to three guideposts by which to frame the inquiry: (1) whether the challenged condition "mirrored those conditions imposed upon inmates in administrative segregation and protective custody," and thus comported with the prison's discretionary authority; (2) the duration of the condition, and the degree of restraint imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's sentence.

Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir. 2003); accord, Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003); Ramirez v. Galaza, 334 F.3d 850, 83.

861 (9th Cir. 2002).

Applying that approach, it has also said: "typically, administrative segregation in and of itself does not implicate a protected liberty interest...." Serrano, 345 F.3d at 1078. However, it has also said:

> Sandin requires a factual comparison between conditions in general population or administrative segregation (whichever is applicable) and disciplinary segregation, examining the hardship caused by the challenged action in relation to the basic conditions of life as a prisoner...."What less egregious condition or combination of conditions or factors would meet the test requires case by case, fact by fact consideration."

Jackson, 353 F.3d at 755 (citation omitted).

The appropriate comparison to be made in this case is between conditions in general population on the low security compound at MSP and disciplinary/administrative segregation. Considering the level of restraint, loss of privileges and amenities, loss of visiting rights, loss of property, and duration, among other things, alleged in Plaintiff's complaint (Doc. 2 at ¶¶ 35-37), placement in segregation as a result of Defendant Palmer's report imposed any atypical and significant hardship upon Strizich compared to life on the low security compound.

On the other hand, substantive due process protects against being subjected to charges on the basis of false evidence that was deliberately fabricated by the Government. See Hardwick v. Vreeken, 844 F.3d 1112, 1120 (9th Cor. 2017); (addressing deliberate fabrication of evidence in civil context, stating "[G]overnment perjury and knowing use of false evidence are absolutely and obviously irreconcilable with the Fourteenth Amendment's guarantee of Due Process in our courts....There are no circumstances in a dependency proceeding that would permit government officials to bear false witness against a parent."); Devereaux v. Abbey, 263 F.3d 1070, 1074-75 (9th Cir. 2001) (en banc) (addressing deliberate fabrication of evidence in criminal context, holding "there is a clearly established constitutional due process right not to be

6

subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government."). This protection is equally applicable in the prison setting.

To prevail on a claim of deliberate fabrication of evidence, the Plaintiff must prove one of the following elements: (1) the Defendant deliberately fabricated evidence that was used to charge, prosecute or convict the Plaintiff; (2) the Defendant continued his investigation of the Plaintiff despite the fact that he knew the Plaintiff was innocent, or was deliberately indifferent to the Plaintiff's innocence, and the results of the investigation were used to charge, prosecute or convict the Plaintiff; or (3) the Defendant used techniques that were so coercive and abusive that he knew, or was deliberately indifferent, that those techniques would yield false information that was used to charge, prosecute or convict the Plaintiff. See Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, 2017 Ed. at 203; Devereaux, 263 F.3d at 1076.

The Ninth Circuit has determined that imposing a deliberate indifference or reckless disregard for an accused's rights or for the truth standard is appropriate in the substantive due process context. See Gantt v. City of Los Angeles, 717 F.3d 702, 708 (9th Cir, 2013); Tennison v. City & County of San Francisco, 570 F.3d 1078, 1089 (9th Cir. 2009).

Here, Strizich alleges Defendant Palmer deliberately fabricated evidence (i.e., planted a white crystal substance that looked like methamphetamine in suran wrap and falsely reported that he found it in Strizich's dresser drawer) that was used to charge, prosecute and convict Strizich of Infraction 4107 - possessing, introducing or using any narcotic, narcotic paraphernalia, or illegal/unauthorized drug. As a result Strizich spent 237 in disciplinary/administrative segregation and suffered great loss of rights and privileges and liberties that were previously afforded to him.

Additionally, Strizich alleges Defendant Palmer fabricated the evidence
and filed the false report in retaliation for filing grievances and lawsuits
and threatening to grieve and sue him. (See Doc. 2). There can be no legitimate
penological interest for fabricating evidence and filing false reports against
Strizich.

Retaliation against a prisoner for exercising his First Amendment right to
seek redress/access the court is an independent constitutional violation.
Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009). To prevail on a First
Amendment retaliation claim, an inmate must prove that: (1) the inmate engaged
in conduct that is protected under the First Amendment; (2) a prison official
took "adverse action" against the inmate; (3) the inmate's protected conduct
was the "substantial or motivating factor" behind the prison official's action;
(4) the official's retaliatory action "would chill or silence a person of
ordinary firmness from future First Amendment activities:; and (5) the action
"did not advance legitimate goals of the correctional institution" because it
was either "arbitrary and capricious" or "unnecessary to the maintenance of
order in the institution." Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir.
2012) (citations and internal quotation marks omitted); Brodheim, 584 F.3d at
1271 (addressing First Amendment claim in summary judgment context). A complaint
that does not allege a "chilling effect" may still state a viable retaliation
claim if it alleges that the plaintiff "suffered some other harm...that is more
than minimal...." Watison, 668 F.3d at 1114 (citations and internal quotation
marks omitted).

Tos satisfy the causation element of a First Amendment retaliation claim,
an inmate must demonstrate that there was a specific causal link between the
defendant's alleged retaliatory conduct and the inmate's exercise of a
constitutional right. See generally, Hartman v. Moore, 547 U.S. 250, 259 (2006)
(citations omitted); Pratt v. Rowland, 65 F.3d 802, 807-08 (9th Cir. 1995). A

8

plaintiff may do so either with direct evidence of a defendant's retaliatory motive, or with circumstantial evidence of the defendant's knowledge of the protected conduct at issue plus some other evidence probative of retaliatory intent, such as "(1) proximity in time between protected speech and the alleged retaliation; (2) [that] the [defendant] expressed opposition to the speech; [or] (3) other evidence that the reasons proffered by the [defendant] for the adverse...action were falsand pretextual." McCallum v. California Dep't of Corr. & Rehab., 647 F.3d 870, 882 (9th Cir. 2011) (citation and quotation marks omitted; alterations in original); see generally, Watison, 668 F.3d at 1114 (direct evidence of retaliatory intent "rarely" available).

**E. Computation of Damages**

Plaintiff Strizich seeks a declaration that the actions of defendant Palmer violated the Constitution and laws of the United States. (Doc. 2 at ¶ 55).

Strizich also seeks $60,000 in compensatory damages against Palmer for the injuries sustained as a result of his retaliatory fabrication of evidence and filing of a false report against Strizich in violation of the First and Fourteenth Amendments. By this demand, Strizich seeks compensatory damages for the loss of privileges and quality of life in his prison living conditions, and loss of limited liberty enjoyed by prisoners, resulting from his 237 days spent in segregation. (See Id. at ¶ 56).

Strizich also seeks $50,000 in punitive damages against Palmer. (Id. at ¶ 57).

**F. Pendency or Disposition of Any Related State or Federal Litigation**
None that Plaintiff Strizich is aware of.

**G. Proposed Stipulations of Fact**

1. At all times relevant Plaintiff Strizich was incarcerated at MSP.

2. At all times relevant Defendant Plamer was employed at MSP.

3. On April 29, 2018, Defendant Palmer was working in A-unit on the low

9

security compound at MSP where Plaintiff Strizich was housed.

4.  On April 20, 2018, at approximately 8:40 am, Defendant Palmer and other guards entered the cell block where Strizich was housed and announced a shakedown and Strizich and the other inmates exited their cells.

5.  Defendant Palmer went into Strizich's cell.

6.  Defendant Palmer reported that he discovered a "suspicious crystal substance" in the "top drawer of [Strizich's] dresser."

7.  As a result of Defendant Palmer's report Strizich was cited for 4107 - possessing, introducing, or using any narcotic, narcotic paraphernalia, or illegal/unauthorized drug.

8.  Based on Defendant Palmer's report Strizich was found of Infraction 4107 at a disciplinary hearing.

9.  As a result of being found guilty of Infraction 4107 Strizich's custody was increased from low security to maximum security.

10.  As a result of being found guilty of Infraction 4107 Strizich spent 237 days in segregation.

...

I.  Identification of Controlling Issues of Law Suitable for Pretrial Disposition
    None that Plaintiff Strizich is aware of.

J.  Name of Each Individual Known or Believed to Have Information that May be Used in Proving or Denying Any Party's Claims or Defenses and a Summary of That Information

    1.  Jory Strizich is the named Plaintiff.

    2.  Dustin Palmer is the named Defendant.

    3.  Angela Weddington was the Compliance Coordinator and may have knowledge of the facts and circumstances giving rise to Plaintiff's claims.

    4.  Christine Klanecky was the Disciplinary Hearing Officer and may have knowledge of the facts and circumstances giving rise to Plaintiff's claims.

10

5. Thomas Wilson was the Associate Warden of Programs and may have knowledge of the facts and circumstances giving rise to Plaintiff's claims.

6. Dawn Jones was a Sergeant and may have knowledge of the facts and circumstances giving rise to the Plaintiff's claims.

7. Mary Jess is a correctional officer and may have knowledge of the facts and circumstances giving rise to Plaintiff's claims.

8. Sherry Glovan is a DOC Investigator and may have knowledge of the facts and circumstances giving rise to Plaintiff's claims.

9. Patrick Martin is a DOC Investigator and may have knowledge of the facts and circumstances giving rise to Plaintiff's claims.

10. Jim Salmonsen is the Warden and may have knowledge of the facts and circumstances giving rise to Plaintiff's claims.

11. Jennifer Dale is a DOC Investigator and may have knowledge of the facts and circumstances giving rise to Plaintiff's claims.

12. Lisa Wirth was a Disciplinary Hearing Officer and may have knowledge of the facts and circumstances giving rise to Plaintiff's claims.

13. Regina Dees-Sheffield was a Grievance Coordinator and may have knowledge of the facts and circumstances giving rise to Plaintiff's claims.

14. Mark Lochrie was a Grievance Coordinator and may have knowledge of the facts and circumstances giving rise to Pliantiff's claims.

15. Billie Reich is a Bureau Chief and may have knowledge of the facts and circumstances giving rise to Plaintiff's claims.

16. Correctional Officers on 1st Shift in A-unit on April 19-20, 2018, may have knowledge of the facts and circumstances giving rise to Plaintiff's claims.

17. Staff at the Montana State Crime lab may have knowledge of the facts and circumstances giving rise to Plaintiff's claims.

18. Joshua Kline is an inmate and may have knowledge of the facts and

11

circumstances giving rise to Plaintiff's claims.

19.  All individuals named in the initial and supplemental disclosure documents by Plaintiff and Defendant.

20.  All individuals identified in discovery that may have knowledge of the facts and circumstances giving rise to Plaintiff's claims.

**K.  Substance of Any Insurance Agreements that may Cover Any Resulting Judgment**

None that Plaintiff Strizich is aware of.

**L.  Status of Any Settlement Discussions and Prospects for Compromise of the Case**

Plaintiff Strizich has presented defense counsel with two offers to settle this case along with his other pending federal cases (Strizich v. Batista, No. 18-36008 and Strizich v. Guyer, No. CV 20-00040-H-BMM-JTJ). Defense counsel met both offers with silence; presumably both were declined. Strizich requested Defendant make a counter offer, and that too was met with silence. At this point Strizich does not anticipate settlement, but is open to consider any offers Defendant may make.

**M.  Siutability of Special Procedures**

None that Plaintiff Strizich is aware of.

DATED this 3<u>ʳᵈ</u> day of December, 2021.

_Jory R. Strizich_

Jory R. Strizich
Plaintiff Pro Se