IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

|  |  |
|---|---|
| JORY STRIZICH,<br><br>                    Plaintiff,<br><br>    vs.<br><br>DUSTIN PALMER,<br><br>                    Defendant. | CV 21–22–H–DWM<br><br>ORDER |

In 2021, Plaintiff Jory Strizich, a state prisoner, filed this action under 42 U.S.C. § 1983 alleging Defendant Dustin Palmer, a former correctional officer, violated Strizich's constitutional rights and state law when he deliberately fabricated evidence of drug possession and filed a false report in response to Strizich filing and threatening to file grievances and lawsuits. (Doc. 2.) Strizich seeks to file a Second Amended Complaint to "bring back a retaliation claim," which was originally pled in his pro se Complaint, (Doc. 2), but was "inadvertently omitted" from the First Amended Complaint, (Doc. 79). (Doc. 89.) Palmer opposes. (Doc. 93.) Strizich's motion is denied.

1

## BACKGROUND

### I.    Factual Background

Strizich, a prisoner at Montana State Prison (the "Prison"), has sued the Montanan Department of Corrections and Prison employees on numerous occasions during his term of incarceration, and accordingly has a litigious reputation among fellow prisoners and Prison staff. (Doc. 79 at ¶¶ 12–13.)

On April 20, 2018, Strizich was housed in cell A128 in the Low Security Compound of the Prison. (*Id.* ¶ 14.) At approximately 8:15 a.m., Palmer and other correctional officers entered Strizich's cell block and announced that they would be searching all the cells. (*Id.* ¶ 15.) Strizich put away his logs, brought out his MP3 player and earbuds, and stood outside his cell listening to music. (*Id.* ¶¶ 16–18.) As Palmer frisked nearby prisoners, Strizich spread his feet and held his arms out waiting to be frisked. (*Id.* ¶¶ 18–19.) Strizich was facing away from Palmer and could not hear him because he was listening to music in his earbuds. (*Id.* ¶¶ 20–21.) After Palmer pulled Strizich's right earbud out of his ear, Strizich removed the left earbud and turned to face Palmer. (*Id.* ¶¶ 22–23.) Strizich asked Palmer "what his problem was," and Palmer replied, "[o]h you can you can hear me now, huh? I said take your beanie off when I pat you down." (*Id.* ¶¶ 24–25.) Strizich responded that if Palmer ever touched him like that again, they "would have problems," to which Palmer asked, "[w]hat are you going to do, grieve and

2

sue me like you do everyone else?" and then stated, "[y]ou whine too much." (*Id.* ¶¶ 26–27.) Strizich then told Palmer that grieving him and suing him was exactly what he would do. (*Id.* ¶ 28.) In response, Palmer threatened Strizich, saying he would "teach [Strizich] a lesson on respecting authority." (*Id.* ¶ 29 (alteration in original).)

Palmer then returned to the cell block to assist the other officers with the search. (*Id.* ¶ 30.) During the search, Officer McKinnon reported finding crystalized "liquid ant bait" in the dayroom. (*Id.* ¶ 32.) The officers conducting the search—McKinnon, Jess, and Palmer—decided the substance was suspicious and set it aside until the search was complete. (*Id.*) Officer McKinnon reported that upon conclusion of the search, Palmer was supposed to take this substance to Sergeant Olhausen. (*Id.* ¶ 33)

After the search concluded, Palmer reported to the Sergeant's Office that he found a saran wrapped baggie filled with "white crystal/powdery substance" in the top drawer of Strizich's dresser. (*Id.* at ¶ 35.) In his report, Palmer stated that he did not discover a suspicious crystal substance in the saran wrap until he inspected it in the Sergeant's office. (*Id.* ¶ 41.) Palmer then turned the substance over the Sergeant Phillpott who took the substance to command post to log it. (*Id.* ¶ 42.) Strizich did keep saran wrap in his cell, which was provided by correctional officers so Strizich could secure heated clothes to his right knee to alleviate chronic

pain. (*Id.* ¶¶ 38–39.) However, Strizich never had drugs in his cell. (*Id.* ¶ 40.) Accordingly, Palmer either planted or lied about finding the saran-wrapped substance in Strizich's dresser draw. (*Id.* ¶ 43.) Palmer also did not write a report about submitting the substance found by Officer McKinnon in the dayroom. (*Id.* ¶ 37.) Thus, Strizich alleges that the substance Palmer reportedly found in his cell was actually the one found in the dayroom by Officer McKinnon. (*Id.* ¶ 44.)

After Sergeant Phillpott went to the command post and logged the substance, command ordered the guards to "lock up inmate Strizich." (*Id.* ¶ 45.) The substance was then "allegedly given to Sherry Gloven in the investigations department." (*Id.* ¶ 46.) Later that day, at approximately 2:00 p.m., Palmer reported that he conducted a field drug test of the substance in the presence of Investigator Patrick Martin, which resulted in a "preemptive positive trace for methamphetamine." (*Id.* ¶¶ 47–48.) However, the Letter of Summation submitted by Investigator Jennifer Dale and reviewed by Paul Szczepaniak on December 19, 2018 ("December 19, 2018 Summation Letter"), reported that Investigator Glovan[1] had conducted the field drug test. (*Id.* ¶ 49.) The field tests used by the Prison commonly produce inaccurate results. (*Id.* ¶ 80.)

---

[1] The First Amended Complaint refers to Sherry as both Sherry Gloven and Sherry Glovan. (Doc. 79 at ¶¶ 46, 49.)

On April 24, 2018, Strizich submitted an "Offender/Staff Request (OSR) Form" stating that "he did not have drugs in cell, that something got mixed up or officers were mistaken, and that if someone would help him, he would 'dismiss the suit,'" referring to a pending civil rights action against Prison officers, *Strizich v. Batista et al.*, 6:16-CV-00012-DLC (2016).[2]  (*Id.* ¶ 53 n.1.)  This same day, Strizich was subjected to a disciplinary hearing where the reported evidence provided and relied upon were the infraction report and incident report.[3]  (*Id.* ¶ 54.)  Strizich's statement at the hearing was that he had not seen any of the photos of the substance and that Palmer admitted that some of the items got mixed up.  (*Id.* ¶ 55.)  Strizich was found guilty of possession of narcotics and sentenced to 30 days detention.  (*Id.* ¶ 56.)  He was then placed into disciplinary detention, otherwise known as solitary confinement, for a period of 30 days.  (*Id.* ¶ 57.)  Strizich appealed the disciplinary hearing decision.  (*Id.* ¶ 58.)

On April 26, 2018, two days after the disciplinary hearing, the Prison sent the substance to the Montana Crime Lab for testing.  (*Id.* ¶ 49; *but see id* ¶ 50 (indicating it was mailed on April 25).)  In a report dated October 25, 2018, the

---

[2] Judgment was entered against Strizich in this case on October 23, 2018, (Docs. 61, 62), which Strizich appealed, (Docs. 67, 71).  The Ninth Circuit affirmed. (Docs. 74, 75.)

[3] Aside from alleging that the Disciplinary Infraction Report was written by Sergeant Olhausen, (Doc. 79 at ¶ 85), the First Amended Complaint does not clearly explain these two reports or the difference between them.

Montana Crime Lab found that the white substance and the saran wrap tested negative for any controlled substances. (*Id.* ¶ 59.)

Strizich's re-hearing took place on December 7, 2018, which is nearly eight months after the initial hearing and a month and a half after the Prison received the results from the Montana Crime Lab. (*Id.* ¶ 61.) The evidence provided and relied upon in the re-hearing was the Montana Crime Lab report. (*Id.* ¶ 62.) The charges against Strizich were dismissed on December 10, 2018, following an administrative review by Officer Wilson. (*Id.* ¶ 63.)

When Strizich's original 30-day disciplinary sentence had expired on May 20, 2018, he was returned to his previous security classification and moved to "LHU1-U." (*Id.* ¶ 64.) Then, on June 13, 2018, the Prison Unit Management Team changed Strizich's classification to maximum custody and he was returned to "LHU2-U." (*Id.* at ¶ 65.) The treatment, available privileges, and housing accommodations were identical in LHU1-U and LHU2-U. (*Id.* ¶ 66.) However, his "maximum custody" classification resulted in Strizich spending an additional 207 days in "what was essentially solitary confinement, ending on December 2, 2018." (*Id.* ¶ 67.) In total, Strizich spent approximately 237 days in various levels of disciplinary segregation despite the absence of actual controlled substances being found in his cell. (*See id.* ¶ 68.) While in solitary confinement, Strizich was deprived of the following: visitation privileges for six months; access to the Steps

6

to Economic Personal Success Program; access to all his personal property; the opportunity to work; access to educational and vocational programs; socialization with other inmates; outdoor recreation with other inmates; access to religious services; and access to Alcoholics Anonymous and other self-help groups. (*Id.* ¶ 69.)

The same day that Strizich was classified as "maximum custody," June 13, 2018, Palmer admitted to Strizich that he had falsely written the report and planted the substance. (*Id.* ¶ 75.) After this admission, Palmer said "I told you I'd teach you a lesson on respecting authority." (*Id.* ¶ 76.) Palmer allegedly "has a history of writing false reports to punish inmates." (*Id.* ¶ 79.) Strizich grieved Palmer's actions towards him to Prison authorities numerous times. (*Id.* ¶ 77.)

Both the day that the substance was allegedly planted in Strizich's cell—April 20, 2018—and the day prior, Strizich was subjected to a random drug test. (*Id.* ¶ 82.) Sergeant Olhausen conducted the preliminary field test of Strizich's urine analysis taken on April 19, which tested positive for THC. (*Id.* ¶ 83.) Strizich was never permitted to view the report with this result. (*Id.* ¶ 84.) There have been no records produced in initial disclosures showing the results of the April 19 test aside from the Disciplinary Infraction Report written by Sergeant Olhausen. (*Id.* ¶ 85.) Sergeant Olhausen also conducted a preliminary field test of Strizich's urine analysis taken on April 20, which tested positive for suboxone.

7

(*Id.* ¶ 86.) Sergeant Olhausen's report regarding this sample is inconsistent as it specifies a negative result for methamphetamine and THC, indicates two different result dates (April 20, 2018 and April 28, 2018), and states it was written on April 20, 2018, however the lab request date was April 23, 2018. (*Id.* ¶ 88.) The two urine analysis samples taken on April 19 and April 20, 2018, were sent to Redwood Labs, which reported that each tested negative for controlled substances. (*Id.* ¶¶ 89–90.) The December 19, 2018 Summation Letter reported that both the April 19 and 20 urine analysis samples preliminarily tested positive for suboxone but makes no mention of the alleged positive result of THC. (*Id.* ¶ 91.)

In a possible effort to allege a pattern of officer misconduct, the First Amended Complaint also states that "[o]n April 19, 2018, Sergeant Phillpott confiscated a bag of coffee from inmate Christian Kraha because the bag was passed to Kraha from fellow inmate Rian Kvernes. The field test of the contents of the baggie came back positive for methamphetamine. Kraha was immediately transferred to disciplinary segregation. A more thorough testing of the substance determined there was no presence of controlled substances." (*Id.* ¶ 81.)

These facts are taken from the First Amended Complaint. (*See* Doc. 79.) Palmer has answered denying most allegations. (Doc. 88.) He does admit to entering Strizich's cell on the day in question, (*id.* ¶ 34), searching it, and discovering "three plastic wrap wrappers" in Strizich's dresser drawer, which he

8

took to Phillpott who in turn took them to command post and placed them in evidence bags, which were given to Gloven, (*id.* ¶¶ 35, 42). He also admits to other facts that arise from the Summation Letter, (*id.* ¶¶ 49, 51), Strizich's Offender Staff Request Form, (*id.* ¶ 53), the infraction, incident, and Montana Crime Lab reports, (*id.* ¶ 41, 52) the disciplinary hearing and re-hearing procedure, (*id.* ¶¶ 54, 55, 58, 61, 63), substance testing, (*id.* ¶ 87), Prison policy (*id.* ¶ 73), and initial disclosures, (*id.* ¶ 85). But many facts recounted here are not yet decided.

## II.    Procedural Background

Strizich, proceeding pro se, brought this 42 U.S.C. § 1983 suit against Palmer on March 23, 2021. (Doc. 2.) On September 28, 2022, the Court granted summary judgment in favor of Palmer on the ground that Strizich had failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), *see* 42 U.S.C. § 1997e(a). (Doc. 55.) Judgment was entered against Strizich. (Doc. 56.) Strizich responded to the motion for summary judgment nearly two weeks later on October 11, 2022. (Doc. 57.) Palmer was ordered by the Court to reply and did so. (Docs. 69, 60.) Strizich then unsuccessfully moved to alter the Court's judgment. (Docs. 61, 64.) On January 31, 2023, Strizich appealed the summary judgment decision. (Doc. 65.) The Ninth Circuit reversed and remanded the case because Strizich's administrative remedy was "unavailable" for PLRA purposes because he had "reliably informed" that the

9

remedy was "not available to him." *Strizich v. Palmer*, 2024 WL 3493294, at *2 (9th Cir. July 22, 2024) (citing *Albino v. Baca*, 747 F.3d 1162, 1173 (9th Cir. 2014)).

Following remand, counsel appeared on Strizich's behalf in September 2024. (Doc. 69.) On November 21, 2024, a preliminary pretrial conference was held, (Doc. 77), and a schedule was entered setting trial for June 30, 2025, (Doc. 78). On December 6, 2024, Strizich filed a First Amended Complaint, alleging a § 1983 claim (Count I), a violation of Strizich's Montana constitutional rights (Count II), negligence (Count III), and abuse of process (Count IV). (Doc. 79.) In response to the First Amended Complaint, Palmer moved to dismiss Counts II, III, and IV, (Doc. 82), which Strizich did not oppose, (Doc. 86). Palmer's motion was granted, (Doc. 87), leaving only Count I, a § 1983 claim for violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments, (Doc. 79).

Strizich now seeks leave to file a Second Amended Complaint to "bring back a retaliation claim," which was originally pled in his pro se Complaint, (Doc. 2), but was "inadvertently omitted" from the First Amended Complaint, (Doc. 79). (Doc. 89.) Palmer opposes. (Doc. 93.) In his pro se Complaint, Strizich alleged that Palmer "deliberately fabricated evidence and filed a false report against him in retaliation for filing and threatening to file grievances and lawsuits, in violation of the First and Fourteenth Amendment to the United States Constitution." (Doc. 2 at

10

1.)  In Count I of his First Amended Complaint, Strizich alleged violations of the

Fourth, Fifth, Eighth, and Fourteenth Amendments based on this conduct, but did

not include a claim based on violation of the First Amendment or Fourteenth

Amendment substantive due process.  (Doc. 79 at ¶¶ 97–99.)  Pursuant to the

November 21, 2024 Scheduling Order, the deadline for amending the pleadings

passed on December 6, 2024.  (Doc. 78 at ¶ 1.)

## LEGAL STANDARD

After a scheduling order has been entered in a case, that "schedule may be

modified only for good cause and with the judge's consent."  Fed. R. Civ. P.

16(b)(4).  It is only after this "more stringent" standard is met that amendment is

considered under the more "liberal" standard of Rule 15, *AmerisourceBergen*

*Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951–52 (9th Cir. 2006) (emphasis

omitted), which states that, absent consent of the opposing party, a court should

"freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2).

Thus, Strizich must first demonstrate that "good cause" as prescribed in Rule 16

justifies amendment.  *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604,

609 (9th Cir. 1992) ("A court's evaluation of good cause is not coextensive with an

inquiry into the propriety of amendment under Rule 15.") (internal quotation marks

and citation omitted).  "Unlike Rule 15(a)'s liberal amendment policy which

focuses on the bad faith of the party seeking to interpose an amendment and

11

prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily

considers the diligence of the party seeking amendment." *Id.* "The district court

may modify the pretrial schedule 'if it cannot reasonably be met despite the

diligence of the party seeking the extension.'" *Id.* (quoting Fed. R. Civ. P.

advisory committee notes (1983 amendments)). Strizich was on notice of these

amended pleadings standards as they were specifically referenced in the November

21, 2024 Scheduling Order. (*See* Doc. 78 at ¶ 3.)

## ANALYSIS

Strizich does not frame his request in terms of good case as prescribed by

Rule 16. To the contrary, he frames the amendment at issue here as "re-alleging" a

claim that existed in the original pro se Complaint, and his counsel fully

acknowledges the inadvertent omission of the retaliation claim in the First

Amended Complaint. Nevertheless, Strizich only argues for amendment under

Rule 15, despite acknowledging that Palmer has argued a lack of good cause

pursuant to Rule 16. Further, in the alternative, Strizich argues that "theoretically

there might not be a necessity" to amend his pleading to add either a First

Amendment claim or a substantive due process claim because "the claim is

included in the First Amended Complaint" based upon the fact that the First

Amended Complaint states, as a factual allegation, that "Palmer retaliated against

12

Strizich because Strizich threatened to sue Palmer," (Doc. 79 at ¶ 78), which is incorporated into Count I, (Doc. 97 at 2–3).

Palmer argues that the Court should deny Strizich's motion because he makes no attempt to show good cause under Rule 16 and Palmer would be unduly prejudiced by this amendment rendering it improper under Rule 15. Ultimately, Palmer is correct and Strizich's motion is denied. However, as to Strizich's alternative argument, he is correct in part and may proceed on his substantive due process claim.

## I.    Claim at Issue Upon Amendment

As a threshold matter, Palmer asserts that Strizich "now seeks to amend his complaint again to add back a First Amendment claim for retaliation and a Fourteenth Amendment substantive due process claim." (Doc. 93 at 2–3.) Indeed, Strizich, in his proposed Second Amended Complaint, pleads a violation of both the First and Fourteenth Amendments. (Doc. 92 at ¶¶ 101–02.) Palmer casts this amendment as going beyond what was originally plead in the original pro se Complaint stating that "[i]n his proposed second amended complaint, [Strizich] also includes allegations that Mr. Palmer violated his Fourteenth Amendment substantive due process right to a disciplinary hearing." (Doc. 93 at 6.) However, the pro se Complaint alleges that Palmer "deliberately fabricated evidence and filed a false report against [Strizich] in retaliation for filing and threatening to file

13

grievances and lawsuits, in violation of the First and Fourteenth Amendments of the United States Constitution." (Doc. 2 at 1.) Specifically, Strizich alleged a violation of "his right to substantive due process at his disciplinary hearing under the Fourteenth Amendment[.]" (*Id.* at 6.) Accordingly, the retaliation claim, as originally pled, was for violations of both the First and Fourteenth Amendment, and the alleged substantive due process violation was based, at least in part, on the disciplinary hearing. The "retaliation claim" that Strizich seeks to add here includes both violations.

## II. Rule 16 "Good Cause"

The "good cause" requirement in Rule 16 "primarily considers the diligence of the party seeking amendment." *Johnson*, 975 F.2d at 609. Indeed, if the moving "party was not diligent, the inquiry should end." *Id.* To show diligence under this standard,

> the movant may be required to show the following: (1) that she was diligent in assisting the Court in creating a workable Rule 16 order; (2) that her noncompliance with a Rule 16 deadline occurred [], notwithstanding her diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference; and (3) that she was diligent in seeking amendment of the Rule 16 order, once it became apparent that she could not comply with the order.

*Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999) (internal citations omitted).

14

Here, Palmer asserts that Strizich fails to meet Rule 16's good cause standard, while Strizich does not argue pursuant to Rule 16 in either his motion or reply. While Strizich's "silence on th[e] issue does not necessarily preclude a finding that he acted diligently," *Morgal v. Maricopa Cnty. Bd. of Supervisors*, 284 F.RD. 452, 461 (D. Ariz. 2012), the record ultimately fails to show diligence.

The timeline of events is critical here. Following remand, a preliminary pretrial conference was held on November 21, 2024, and the Scheduling Order was entered that same day. (Docs. 77, 78.) On December 6, 2024, Strizich amended his Complaint, which was the deadline for amending pleadings that both parties agreed to at the Rule 16 conference. (Doc. 79.) On January 1, 2025, Palmer moved to dismiss all claims against him except for the single claim that now remains. (Doc. 82.) Strizich did not oppose the motion to dismiss, and it was granted on February 19, 2025. (Doc. 87.) On March 5, 2025, Palmer answered the First Amended Complaint. (Doc. 88.) On March 13, 2025, Strizich moved for leave to file a Second Amended Complaint, (Doc. 89), and stated that "he did not become aware of the omission until reviewing the State's Answer[,]" (Doc. 97 at 2). On April 3, 2025, Palmer moved for summary judgment. (Doc. 94).

The retaliation claim existed at the time of the preliminary pretrial conference and when the November 21, 2024 Scheduling Order was issued, (*see* Docs. 77, 78), and the record does not suggest the Strizich was not "diligent in

15

assisting the Court in creating a workable Rule 16 order[,]" *see Jackson*, 186

F.R.D. at 608. Accordingly, Strizich meets the first diligence inquiry.

The next question is whether Strizich failed to comply with the amended

pleadings deadline "notwithstanding [his] diligent efforts to comply, because of the

development of matters which could not have been reasonably foreseen or

anticipated at the time of the Rule 16 scheduling conference." *See id*. This is a

closer question because Strizich's counsel admits to "inadvertently omit[ting]" the

retaliation claim, (Doc. 90 at 2; Doc. 97 at 2), and states that "he did not become

aware of the omission until reviewing the State's Answer[,]" (Doc. 97 at 2), which

was filed on March 5, 2025, (Doc. 88). Essentially, Strizich's counsel created the

"development of matters which could not have been reasonably foreseen or

anticipated" at the preliminary pretrial conference. *See Jackson*, 186 F.R.D. at

608. However, this second element looks not just at foreseeability but also at

whether such noncompliance occurred "notwithstanding [] diligent efforts to

comply." *Id*. Here, Strizich's counsel, by failing to discover his omission sooner,

did not demonstrate diligent efforts. The retaliation claim was plead in the original

pro se Complaint. (Doc. 2.) The First Amended Complaint was subject to a

motion to dismiss nearly two months before Strizich's counsel noticed the

retaliation claim was missing. (*See* Doc. 82; Doc. 90 at 2; Doc. 97 at 2.)

Counsel's "fail[ure] to pay attention" at this stage "is not compatible with a finding

of diligence and offers no reason for grant of relief." *Johnson*, 975 F.2d at 610.

Accordingly, Strizich fails to meet the second diligence inquiry, and the final

inquiry need not be addressed. *See id.* at 609 (explaining if the moving "party was

not diligent, the inquiry should end").

Because Strizich's motion is properly addressed under Rule 16, and he fails

to meet its requirements for good cause, the application of Rule 15 is not necessary

or appropriate here. *See AmerisourceBergen Corp.*, 465 F.3d at 951–52.

Accordingly, Strizich's motion to amend is denied because he fails to demonstrate

good cause as prescribed by Rule 16.

**III.    Alternative Argument**

Strizich argues, in the alternative, that "theoretically there might not be a

necessity" to amend his pleading to add either a First Amendment claim or a

substantive due process claim because "the claim is included in the First Amended

Complaint" based upon the fact that the First Amended Complaint states that

"Palmer retaliated against Strizich because Strizich threatened to sue Palmer,"

(Doc. 79 at ¶ 78), which is incorporated into Count I, (Doc. 97 at 2–3).

Count I is a § 1983 claim. "To state a claim under § 1983 a plaintiff must

both (1) allege the deprivation of a right secured by the federal Constitution or

statutory law, and (2) allege that the deprivation was committed by a person acting

under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir.

17

2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).  The inquiry whether a

plaintiff has been deprived of a right is a threshold requirement.  *Baker v.*

*McCollan*, 443 U.S. 137, 142 (1979).  In the First Amended Complaint, Strizich

pleads deprivation of constitutional rights, specifically based on violations of the

Fourth, Fifth, Eighth, and Fourteenth Amendments.  (Doc. 79.)  While violations

of the First Amendment and the Substantive Due Process Clause of the Fourteenth

Amendment are not so labelled in the First Amended Complaint, Strizich insists

they are implicated by the factual allegations, which state, "Palmer retaliated

against Strizich because Strizich threatened to sue Palmer[,]" (*id.* ¶ 78), which is

"incorporated" into the § 1983 claim, (*id.* ¶ 92).  And, a violation of the Fourteenth

Amendment is plead, just not specifically as a violation of substantive due process.

(*See id.* ¶ 97.)

> The pleading standard in Rule 8 of the Federal Rules of Civil Procedure

requires "a short and plain statement of the claim showing that the pleader is

entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair

notice of what the . . . claim is and the grounds upon which it rests[,]" *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  Thus, the fair notice requirement has

two elements: notice of the claim and notice of the grounds upon which it rests.

*See id.*  Applying this fair notice requirement to § 1983 claims is somewhat unique

because § 1983 provides a cause of action but "does not create any substantive

rights; rather it is the vehicle whereby plaintiffs can challenge actions by governmental officials." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Thus, a § 1983 claim and the constitutional right upon which it is based are inextricably intertwined; one cannot pursue a constitutional claim against a state or local official without alleging a violation of § 1983 and one cannot allege a violation of § 1983 without identifying the constitutional right at issue. Thus, a § 1983 claim and the grounds upon which it rests, under the fair notice requirement, somewhat overlap in this context. Here, Palmer was clearly on notice of a § 1983 claim. The question is whether Strizich sufficiently plead a violation of his rights under the First Amendment or Fourteenth Amendment Substantive Due Process Clause as part of that § 1983 claim to provide Palmer with fair notice of those specific constitutional deprivations. Ultimately, Strizich sufficiently plead only his substantive due process claim.

### a. First Amendment Retaliation

A plaintiff claiming a First Amendment retaliation claim must establish facts showing that "(1) he engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity[,] and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016) (internal quotation marks omitted). While the First Amended

Complaint does not contain the word "retaliation" or "First Amendment," it states

as part of the factual background that "Palmer retaliated against Strizich because

Strizich threatened to sue Palmer." (Doc. 79 at ¶ 78.) The incorporation of one of

ninety-one factual allegations cannot be said to have given Palmer fair notice of a

distinct First Amendment claim. *See* Fed. R. Civ. P. 8(a); *Twombly*, 550 U.S. at

545. Though each element of a First Amendment retaliation claim is met by the

facts as alleged, Strizich's counsel chose to assert his § 1983 claim by identifying

specific constitutional violations, and did not name the First Amendment, while

expressly naming four other Amendments. This choice clearly diverged from

Strizich's pro se Complaint, which explicitly identified a First Amendment

retaliation claim by name. (*See* Doc. 2.) Thus, Palmer had no reason to believe

that this omission was anything more than a strategic choice by counsel as to what

claims to plead. Accordingly, even under the liberal Rule 8(a) pleading standard,

Palmer did not have fair notice that Strizich plead a First Amendment retaliation

claim in his First Amended Complaint.

### b. Fourteenth Amendment Substantive Due Process

The Fourteenth Amendment has a "substantive component" that protects

individuals against "certain government actions regardless of the fairness of the

procedures used to implement them." *Collins v. City of Harker Heights, Tex.*, 503

U.S. 115, 125 (1992) (internal quotation marks omitted). Establishing a

20

substantive due process violation is difficult as there is a "presumption that the administration of government programs is based on a rational decisionmaking process that takes account of competing social, political, and economic forces." *Id.* at 128. Consistently, substantive due process "forbids the government from depriving a person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with the rights implicit in the concept of ordered liberty.'" *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009) (quoting *Nunez v. City of L.A.*, 147 F.3d 867, 871 (9th Cir. 1998)). Specifically, "[t]o prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017).

Here, the First Amended Complaint alleges that "Palmer, while acting under color of law, deprived Strizich of his civil rights under the Fifth and Fourteenth Amendments, which prohibit[] a deprivation of liberty or property without due process of law." (Doc. 79 at ¶ 97.) To be sure, this language does not distinguish between substantive or procedural due process. However, unlike the First Amendment claim above, a violation of the Fourteenth Amendment was expressly identified in the First Amended Complaint, and the facts alleged therein provide ample grounds for a substantive due process claim. For example, on April 20,

21

2018, a heated interaction between the parties occurred, (*id.* ¶¶ 22–29), which culminated in Palmer threatening to teach Strizich "a lesson on respecting authority," (*id.* ¶ 29). Palmer then entered Strizich's cell, (*id.* ¶ 34), and either "planted or lied about finding the white powdery substance" in Strizich's dresser, (*id.* ¶ 43), wrote a report documenting this finding, (*id.* ¶¶ 35, 41), and later admitted directly to Strizich that he had framed him, (*id.* ¶ 76), and planted the alleged drugs, (*id.* ¶ 75), which ultimately tested negative for any controlled substances, (*id.* ¶ 59). Further, this case centers on an allegation of fabrication of evidence by a state official, which is prohibited by the Fourteenth Amendment. *See Devereaux v. Abbey*, 263 F.3d 1070, 1074–75 (9th Cir. 2001) (en banc). Accordingly, under the liberal Rule 8(a) pleading standard, Palmer did have fair notice of this "claim and the grounds upon which it rests." *Twombly*, 550 U.S. at 545.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that Strizich's motion to amend his complaint, (Doc. 89), is DENIED.

IT IS FURTHER ORDERED that, under the claims as alleged in the First Amended Complaint, (Doc. 79), Strizich is not permitted to proceed on a First Amendment retaliation claim, but may proceed on a Fourteenth Amendment substantive due process claim. Supplement briefing as to the substantive due

process claim does not appear necessary here because the claim has been

sufficiently addressed in the summary judgment briefing. *See* Fed. R. Civ. P. 56.

Strizich proceeded as to his substantive due process claim in his response to

summary judgment, and Palmer has responded to this claim in his reply. (Docs.

100–02, 105.) Nonetheless, Palmer may file a supplemental brief as to the

Fourteenth Amendment substantive due process claim not to exceed five pages on

or before May 12, 2025.

   DATED this _____ day of May, 2025.

          _____
          Donald W. Molloy, District Judge
          United States District Court